**EXHIBIT B**

# STROOCK

**Via Federal Express**

John R. Loftus
Direct Dial: 310-556-5954
Direct Fax: 310-407-6454
jloftus@stroock.com

March 28, 2016

Jason Feazell
Case Manager
JAMS
1601 Cloverfield Boulevard
Suite 370-S
Santa Monica, California  90404

  Re: ***Nu Image, Inc. v. Calrissian LP, et al.***
    Reference No. 1210033079

Dear Mr. Feazell:

In accordance with the JAMS Comprehensive Arbitration Rules and Procedures and the March 2, 2016 Notice to All Parties, Respondents[1] hereby submit this Statement of Defense and Counterclaim in response to the Demand for Arbitration and Statement of Dispute ("Statement of Dispute") filed on behalf of the Claimant, Nu Image, Inc.

## PRELIMINARY STATEMENT

Pursuant to a Purchase Agreement dated as of August 18, 2014 ("Purchase Agreement"),[2] Respondents, through entities led by Virgo, a private equity fund, acquired all outstanding ownership interests in an independent film distribution company then known as Millennium Entertainment, LLC ("Millennium" or the "Company"). Sellers had been unsuccessful in their prior attempts to sell Millennium before Respondents expressed interest in the Company and began evaluation of a potential transaction in or about January 2014.[3] Rebuked in their prior

---

[1] "Respondents" collectively include Calrissian LP ("Buyer"), Virgo Societas Partnership III (Onshore), L.P., Virgo Societas Partnership III (Offshore), L.P. (collectively, "Buyer Parents"), and Virgo Investment Group LLC ("Virgo").

[2] Any undefined capitalized terms herein shall have the meanings given to them in the Purchase Agreement.

[3] Sellers also include Prentice Consumer Partners, LP, Nigel Sinclair, Guy East and Bill Lee. Mr. Lee was employed at Millennium as its Chief Executive Officer before and through the Closing until his termination on December 4, 2015 for, among other reasons, ongoing and pervasive mismanagement of the Company. By letter dated February 1, 2016, Mr. Lee was provided with formal notice of the termination of his employment for cause pursuant to the terms of his Executive Employment Agreement for, among other reasons, mis- and malfeasance in connection with the representations and warranties made under the Purchase Agreement as well as knowingly

Jason Feazell
March 28, 2016
Page 2

efforts to unload the Company, Sellers were determined to close the transaction with Respondents at an inflated price, facilitated by Millennium's intentionally fraudulent actions to represent the Company's financial performance in a false light. In order to accomplish Sellers' goal, Millennium embarked on a methodical scheme to falsify Millennium's Financial Statements, misrepresent the Company's financial performance, and otherwise mislead Respondents concerning the value of the Company as of the Closing Date. With the recent terminations of Bill Lee and John Avagliano,[4] Virgo has uncovered and is currently working with the Company's employees and a forensic diligence firm to document what appears to be a multi-year systematic and intentional effort to misrepresent Millennium's financial condition.

Millennium was presented to Buyer – an investor – as a healthy, growing business. To confirm Millennium's representations concerning historical performance, sales and profitability, and in accordance with industry practice, Buyer performed customary due diligence (including a review of the Company's books and records, retaining a due diligence accounting firm, Baker Tilly, as well as discussions with management). Buyer relied on financial statements presented by Millennium to evaluate the Company's current financial performance and, critically, the likelihood of achieving projected sales and profitability.

Unfortunately, and as Respondents have only recently discovered, the Financial Statements and related documents were manipulated as part of an intricate scheme that would have been virtually impossible to detect at the time of the transaction. Misrepresentations by management specifically inflated certain key financial metrics (e.g., EBITDA and EBITD) used by Buyer (and other prospective investors consistent with generally accepted market practices) to evaluate the general health of the business, its future prospects and, ultimately, to ascribe a valuation for the transaction. Those misrepresentations were done intentionally to effectuate the transaction with the Buyer and maximize sale proceeds to the Sellers. Further, the misrepresentations were in bad faith with complete disregard for the adverse impact on the (a) going concern business operations; (b) employment status of numerous individuals with the Company; (c) Company's creditors (including its bank lenders); and (d) capital preservation of the investment made by the Buyer.

Respondents spoke frequently with Millennium's management and indeed, Sellers expressed frustration at the extent and duration of Buyer's inquiries. Given certain concerns which did surface in the diligence process and in order to protect against unknown risks, Virgo made several specific demands of Sellers in the Purchase Agreement, which were critical to Buyer's

---

misleading the Company's Board of Directors by repeatedly misrepresenting the operations and financials of the business.

[4] John Avagliano, the Company's Chief Financial Officer until his removal on or about July 31, 2015, worked closely with Bill Lee in the scheme to misrepresent the Company's operations and financial status. Although not a Seller, Mr. Avagliano's employment agreement provided bonus and equity incentive awards based on the Company's performance. Further, Mr. Avagliano is specifically identified in the Purchase Agreement as one whose knowledge is attributed to the Company. (*See* Section 1.65.) Mr. Avagliano was also sent a letter on February 1, 2016 serving as formal notice of the recent discovery of information that would have resulted in a termination for cause had such information been known to the Company at or prior to the time of his departure. Respondents have no information at this time to show that individual Sellers other than Mr. Lee participated in this scheme.

STROOCK & STROOCK & LAVAN LLP • NEW YORK • LOS ANGELES • MIAMI • WASHINGTON, DC
2029 CENTURY PARK EAST, LOS ANGELES, CA 90067-3086 TEL 310.556.5800 FAX 310.556.5959 WWW.STROOCK.COM

Jason Feazell
March 28, 2016
Page 3

decision to enter into the transaction. Specifically, Virgo insisted that the Purchase Agreement include: (a) broad and detailed representations and warranties to protect against the risks identified in Buyer's Quality of Earnings report and the temporal gap between the analysis and the Closing; (b) an exclusion from capped liabilities for "intentionally fraudulent misrepresentations" and (c) provisions for a detailed Working Capital adjustment and true up post-Closing. Respondents at the time believed these demands would ferret out any prospective misstatements and confirm the true state of the Company's Financial Statements and operations and protect Virgo against potential fraudulent acts such as those intentionally perpetuated and concealed by Millennium.

Given their respective retentions as Chief Executive Officer and Chief Financial Officer, Mr. Lee (a Seller) and Mr. Avagliano were positioned to not only coordinate the manipulation of Millennium's Financial Statements pre-Closing, but also to mask the Company's post-Closing performance in their communications and revenue forecasts to Respondents and the Board of Directors. Messrs. Lee and Avagliano, also directed others at the Company to intentionally misrepresent returns (deductions against gross revenue) in the 2014 financials by requiring them to book inadequate return reserves in the income statement through June 2014 (immediately preceding Buyer's acquisition of the Company). In addition, participation liabilities were understated and revenue recognition figures were deliberately misrepresented. The effect of this misconduct was to artificially inflate EBITDA and EBITD calculations used by Buyer to evaluate the general health of the business and ascribe a valuation for the transaction. Illustrative, though non-exhaustive, examples of fraudulent representations are briefly summarized below.

**Return Reserves**

Revenues from home video (physical) distribution are recognized net of an allowance for estimated returns and related costs—a good faith disclosure of returns to date together with good faith estimates for future returns is critical to a fair disclosure of the Company's financial status. Millennium typically conducted "soft" monthly financial closes and "hard" quarterly financial closes to address, among other issues, actual returns and estimated return reserves. As part of the quarterly financial close, appropriate adjustments to the return reserve were determined at month's end based on variables typically relied upon to estimate future returns. Per Millennium's typical procedures, the return reserve would be increased or decreased based upon a key title-by-title review to adequately reserve for anticipated returns. In March 2014, for example, this true-up process resulted in a $1.4 million reduction to the return reserve which Virgo's Quality of Earnings analysis identified as a return reserve adjustment. The corresponding entry in the March financials approximated this adjustment.

In June 2014, this same review process required a $2.6 million increase to the return reserve per the Company controller's ("Controller") recommendations to Mr. Avagliano. Yet, in this instance and knowing that the return reserve adjustment would impact Buyer's valuation metrics, Avagliano unilaterally rejected the Controller's recommendation, and accordingly, the corresponding entry in the June financials reflected a mere $1.6 million increase in the return reserve, *or a $1.1 million shortfall.* (See Exhibit 1, a July 7, 2014 email to Mr. Avagliano with

Jason Feazell
March 28, 2016
Page 4

attached analysis showing the Controller's recommended return reserve adjustments). A July 25, 2014 email exchange between Messrs. Lee and Avagliano (less than a month before the Closing) reveals their joint intent to manipulate the numbers to avoid having Buyer walk from the transaction:

> Bill Lee: Does Virgo have the numbers? My call with Virgo was not very good, but    clearly a miss in June to this level will have a major impact on the transaction. Let me    know when you would like to connect.

> John Avagliano: Virgo and Baker Tilly [Buyer's accounting due diligence firm] both    have the June numbers…. Fortunately In (sic) the model we adjusted June down so the    variance isn't too bad  July will be another challenge … And we can't fix this one

(See Exhibit 2)

A corresponding $4.8 million return reserve was later added as a goodwill accounting item through the use of purchase accounting post-Closing.  This enabled Millennium to conceal material additional returns and/or return reserves that otherwise should have been booked to the income statement prior to Closing.   The result of these misrepresentations was a material inflation of last twelve (12) month June 2014 EBITDA (a key financial metric for the acquisition) and full year 2014 EBITDA (a key financial metric for the Company) by $5 million or more versus a full year 2014 projection of approximately $12.0 million (or more than a 40% decline).  Respondents are in the process of uncovering further evidence to show a material deviation from the Company's accounting policies and practices leading up to Closing. Accordingly, the financials presented to Buyer prior to the acquisition and the financials presented to the Board post-acquisition did not "fairly and accurately present in all material respects" the financial position of Millennium, as represented and warranted.

**Participation Liability**

Participation liability represents amounts due to content producers from net profit / collections generated by film content that the Company distributes.  Once such a liability is calculated, per standard accounting practices, that amount should be recognized as a cost line item (participation expense) that is included in the Company's calculation for EBITD and EBITDA and also added to payables on the balance sheet.

As of June 2014, the reported participation expense / payable due for certain key film content was understated relative to internal calculations / work papers provided by the Controller to Mr. Avagliano.  As an example, the participation liability calculated for certain Nu Image content as of June 2014 was $2.1 million as calculated by the Controller (see attached Exhibit 3). The booked participation liability in the June 2014 financials for that same content was $1.5 million, or approximately $600,000 lower than the internal calculations.  (See Exhibit 4).  In addition, Millennium booked a $539,000 reduction in total participation liability in June 2014 for a "NI

STROOCK & STROOCK & LAVAN LLP • NEW YORK • LOS ANGELES • MIAMI • WASHINGTON, DC
2029 CENTURY PARK EAST, LOS ANGELES, CA 90067-3086 TEL 310.556.5800 FAX 310.556.5959 WWW.STROOCK.COM

Jason Feazell
March 28, 2016
Page 5

Title Performance Accrual," which was subsequently reversed post-Closing – the net effect is a deliberate understatement of participation expense by this amount in the June 2014 financials to subsequently overstate last twelve (12) month June 2014 EBITD and EBITDA (key financial metrics for the acquisition). Respondents are currently in the process of uncovering evidence of additional misconduct.

**Revenue Recognition**

Respondents have recently uncovered examples of aggressive revenue recognition where the Company booked revenue without bona fide sales. As an example, management booked $800,000 in gross revenue in June 2014 related to a potential amendment to the *Killing Season* distribution agreement with Nu Image. At the end of June 2014, no formal amendment had been documented; accordingly, this $800,000 item was reversed post-Closing.

To highlight other post-Closing examples to demonstrate a trend of ongoing misrepresentation of revenue recognition, Messrs. Lee and Avagliano submitted to the Board of Directors fraudulent December 2014 monthly financials, including an illegitimate shipment of approximately $2 million of physical product to a third party with no reasonable expectation or plan to generate sales from such shipment - this shipment was booked as revenue in the December 2014 financials, inflating that month's total physical revenue by more than 10%. Messrs. Lee and Avagliano had full knowledge of this fraudulent revenue entry and even facilitated its reporting to the Board of Directors and the Company's senior lender group. This illegitimate revenue item was reversed in 2015. Respondents are in the process of uncovering additional evidence of misconduct in this regard.

**The "Stub Audit"**

There were no material goodwill or intangible assets disclosed in the Financial Statements attached and included as part of the Purchase Agreement. Post-closing, Millennium's accounting firm, BDO USA, LLP ("BDO"), prepared a "stub audit" for the limited period of time post-Closing to year end (August 19, 2014 – December 31, 2014). This audit, released in June 2015 (almost one year after the Close), revealed a distressed entity with materially different financials than had been disclosed and represented in the due diligence phase and at Closing. BDO, which has steadfastly refused to produce its work papers in support of the stub audit, prepared an opening balance as of the Closing Date with a line item for intangible assets, including goodwill, of $36,739,000 ($9,284,000 and $28,750,000 respectively for intangible assets and goodwill); with the adjustments in the stub audit, BDO concluded the total purchase consideration for Millennium was almost $50.6 million versus the actual aggregate purchase price of $41 million (inclusive of the Non-Contingent Payments). This presentation represents material post-close adjustments which are entirely inconsistent with the Financial Statements represented and warranted by the Company at the time of the Close, and contradictory to the representations and warranties that such statements had been prepared from the books and records of Millennium Group in accordance in all material respects with GAAP.

STROOCK & STROOCK & LAVAN LLP • LOS ANGELES • NEW YORK • MIAMI • WASHINGTON, DC

2029 CENTURY PARK EAST, LOS ANGELES, CA 90067-3086 TEL 310.556.5800 FAX 310.556.5959 WWW.STROOCK.COM

Jason Feazell
March 28, 2016
Page 6

---

In short, Respondents were sold a wildly inflated bill of goods. Respondents negotiated the purchase price based in part on an earnings multiple derived from the Financial Statements and now find that the entire basis for the transaction was unsupportable at the valuation levels established based on the Financial Statements. The evidence uncovered to date confirms the books of account and other financial records of the Company were not maintained in the Ordinary Course of Business[5] and in fact were and are inadequate for the operations of the business as assumed by Respondents. Respondents will present evidence at the hearing to show Financial Statement adjustments made both pre- and post-Closing were not consistent with GAAP accounting and that there were material changes not only to the process by which estimates were historically recommended by the Controller and accepted by management but that there were material changes to the Company's accounting policies, principles, methods and practices including with respect to reserves and allowances. Accordingly, Respondents were and are justified in withholding all Non-Contingent Payments otherwise provided for in the Purchase Agreement. Without question and even based on the limited information uncovered to date, Buyer would have negotiated a purchase price based on the acquisition of a distressed asset that would have been literally millions of dollars below the actual purchase price. Accordingly, and together with the counterclaim below, Respondents seek all damages, including attorneys' fees and costs, according to proof.[6]

## STATEMENT OF DEFENSE

1.     Respondents admit that Nu Image, Inc. is the representative of a group of sellers ("Seller Representative") under the Purchase Agreement by and among Millennium Entertainment, LLC ("Millennium"), each selling party listed on Schedule A (collectively the "Sellers"), and Nu Image Holdings on the one hand, and Calrissian, LP, Virgo Societas Partnership III (Onshore), L.P. and Virgo Societas Partnership III (Offshore), L.P. on the other hand.

2.     Respondents admit that Claimant submits its Demand for Arbitration before JAMS in its capacity as Seller Representative, and further, that Claimant seeks to recover remaining amounts it alleges are due under the Purchase Agreement. Respondents were not served with the exhibits attached to the Statement of Dispute and accordingly, they cannot confirm that Exhibit A is a true and correct copy of the Purchase Agreement. Respondents admit that the Buyer and Buyer Parents together with an affiliate, Virgo, are named respondents. Respondents admit Virgo is the designated entity in the Purchase Agreement to receive notices and other communications.

---

[5] A defined term in the Purchase Agreement meaning "with respect to a Person [defined to mean an individual or entity], the ordinary course of business consistent with past practice of such Person." (See Section 1.96)

[6] Respondents reserve all rights to amend or supplement their Statement of Defense, Counterclaim, and prayer for damages.

LA 51978537

3.    Respondents admit that Millennium (n/k/a Our Alchemy, LLC) is an independent film distributor based in Los Angeles, California previously owned by Sellers, including Claimant.  Respondents admit that a portion of Millennium's revenue is generated by sales of motion picture DVDs to retailers including WalMart and Target and that its earnings, in part, are dependent on the success of such films.    Subject to certain contractual obligations and restrictions, Respondents admit retailers are permitted to return unsold DVDs to Millennium. Except as expressly admitted, Respondents deny the allegations in this paragraph.

4.    Respondents admit that Millennium was sold to Buyer and Buyer Parents for an aggregate purchase price of $41 million.  Respondents admit that Millennium was renamed but note that the legal name is "Our Alchemy, LLC."

5.    Respondents admit that the aggregate purchase price included four Non-Contingent Payments to be made subsequent to the Closing Date for a total of $5 million. Respondents deny that such payments were or are due and owing.

6.    Respondents admit that they did not contest Millennium's financial condition or receive an adjustment to the sales price within 30 days after the Closing Date under Section 2.6 of the Purchase Agreement.  Respondents admit that up until February 17, 2016 they did not seek to formally exercise their rights under Section 2.6 of the Purchase Agreement.  Except as expressly admitted, Respondents deny the remaining allegations contained in this paragraph.

7.    Respondents admit that they made the 1st Non-Contingent Payment of $900,000 on or about August 24, 2015.

8.    Respondents admit that Mark Perez received an email on February 11, 2016 inquiring about the status of the 2nd Non-Contingent Payment.  Respondents were not served with the exhibits attached to the Statement of Dispute and accordingly, they cannot confirm that Exhibit B attached to the Statement of Dispute is a true and correct copy of the February 11, 2016 email.

9.    Respondents admit that on February 17, 2016, approximately eighteen (18) months after the Purchase Agreement Closing Date, Buyer sent a letter to Seller Representative stating that "Buyer will not be funding the upcoming 2nd Non-Contingent Payment otherwise due on or about February 18, 2016."  The letter also advised that "Buyer anticipates that the 3rd and 4th Non-Contingent Payments will be similarly withheld (as an offset against Buyer's damages)."  Respondents were not served with the exhibits attached to the Statement of Dispute and accordingly, they cannot confirm that Exhibit C attached to the Statement of Dispute is a true and correct copy of the February 17, 2016 letter.  Respondents note that although portions of the letter are quoted in the Statement of Dispute, the letter in its entirety speaks for itself.

10.    Respondents deny that the allegations in their February 17, 2016 letter are baseless.  Respondents admit that they, together with other professionals, conducted due diligence concerning certain aspects of Millennium's business and finances.  Respondents deny being on notice of the misrepresentations and concealments engaged in by Sellers, the effects of

STROOCK & STROOCK & LAVAN LLP • NEW YORK • LOS ANGELES • MIAMI • WASHINGTON, DC
2029 CENTURY PARK EAST, LOS ANGELES, CA 90067-3086 TEL 310.556.5800 FAX 310.556.5959 WWW.STROOCK.COM

Jason Feazell
March 28, 2016
Page 8

which far exceeded the estimates made by third party diligence. Respondents justifiably relied on the Company's representations and warranties regarding the accuracy of the Financial Statements, among other things, as set forth in the Purchase Agreement after a customary due diligence process with multiple third party advisors over a six month period. Information uncovered to date reveals that in fact, Millennium did change its accounting policies, principles or methods including its treatment of reserves and participation liabilities.

11.     Respondents deny that Buyer and Buyer Parents were "well aware" of all aspects of Millennium's business and financials.  Respondents have since learned Millennium deliberately provided inaccurate Financial Statements based on unwarranted and intentionally misleading entries and assumptions and that fraudulent actions were undertaken to inflate and/or misrepresent the financial condition of the business.  Respondents deny Claimant's statement that management did not knowingly misstate any information.

12.     Respondents deny Claimant's allegations concerning management's projections of 2014 EBITDA.  Claimant's projections of 2014 EBITDA were based on inaccurate financials and unwarranted assumptions. Respondents only learned the full magnitude of Millennium's breaches of the representations and warranties in the Purchase Agreement based on a review conducted as part of Mr. Lee's termination for cause in or about December 2015 and the ongoing financial deterioration of the Company.  In the wake of Mr. Lee's termination, other individuals expressed an open willingness to talk and revealed that management had knowingly made material misrepresentations in connection with Millennium's Financial Statements and the Purchase Agreement.  Respondents' 1st Non-Contingent Payment in August 2015 was paid before Respondents were aware of Sellers' breaches of the representations and warranties in the Purchase Agreement.

13.     Respondents deny that their decision to withhold the 2nd, 3rd, and 4th Non-Contingent Payments was prompted by any alleged mismanagement of the business (Respondents deny mismanaging the business) or acquisition of ANconnect and Anderson Digital. Respondents admit there has been limited adverse publicity concerning certain recent business decisions at Millennium made to address and meet challenges in the current market. Respondents deny that "Millennium has placed itself in financial distress" or that it has withheld the payments at issue for any improper reason.

14.     Respondents deny that their actions are unjustified or constitute a breach of the Purchase Agreement as the agreement specifically permits Respondents to withhold these payments (and to seek additional damages) given the breach of the representations and warranties in the Purchase Agreement. Respondents further deny that Sellers have suffered any damages as a result of any action or inaction of Respondents.

## AFFIRMATIVE DEFENSES

Without waiving or excusing Claimant's burden of proof or admitting that any of the following are defenses upon which Respondents have any burden of proof as opposed to denials of matters

STROOCK & STROOCK & LAVAN LLP • LOS ANGELES • NEW YORK • MIAMI • WASHINGTON, DC
2029 CENTURY PARK EAST, LOS ANGELES, CA 90067-3086 TEL 310.556.5800 FAX 310.556.5959 WWW.STROOCK.COM

Jason Feazell
March 28, 2016
Page 9

as to which Claimant has the burden of proof, or that Respondents have any burden of proof at all, Respondents hereby assert the following affirmative defenses.

### Failure to State a Claim

15.    The Statement of Dispute, and each purported claim alleged therein, fails to state a claim upon which relief can be granted against Respondents.

### Estoppel

16.    The Statement of Dispute is barred, in whole or in part, by the conduct, actions and inactions of Claimant, which amount to and constitute an estoppel of the causes of action and any relief sought thereby.

### Waiver

17.    The Statement of Dispute is barred, in whole or in part, by the conduct, actions and inactions of Claimant which amount to and constitute a waiver of any right or rights that Claimant may or might have in relation to the matters alleged therein.

### Consent

18.    Claimant consented to and acquiesced in Respondents' alleged conduct.

### Ratification

19.    The Statement of Dispute is barred, in whole or in part, by the conduct, actions and inactions of Claimant under the doctrine of ratification.

### Justification

20.    The Statement of Dispute is barred, in whole or in part, because Respondents were privileged and justified in acting as they did.

### Failure to Mitigate Damages

21.    Although Respondents deny that Claimant suffered any damages, to the extent that Claimant suffered damages, failed to mitigate those damages.

### Setoff

22.    By reason of the course of conduct of Claimant in connection with the claims alleged in the Statement of Dispute, Respondents are entitled to a setoff and/or recoupment with respect to all of the matters alleged in the Statement of Dispute.

LA 51978537

STROOCK & STROOCK & LAVAN LLP · LOS ANGELES · NEW YORK · MIAMI · WASHINGTON, DC
2029 CENTURY PARK EAST, LOS ANGELES, CA 90067-3086 TEL 310.556.5800 FAX 310.556.5959 WWW.STROOCK.COM

## Unclean Hands

23.     The Statement of Dispute is barred, in whole or in part, by the conduct, actions and inactions of Claimant, and/or any person(s) or entities they purport to represent, under the doctrine of unclean hands.

## Fraud

24.     The Statement of Dispute is barred, in whole or in part, by Claimant's fraudulent acts.

## Unjust Enrichment

25.     The Statement of Dispute is barred, in whole or in part, because it would result in the unjust enrichment of Claimant.

## In Pari Delicto

26.     The Statement of Dispute is barred, in whole or in part, by the doctrine of in pari delicto.

## Acquiescence

27.     The Statement of Dispute is barred, in whole or in part, because Claimant acquiesced to some or all of the acts and events alleged in the Statement of Dispute.

## Lack of Causation

28.     The alleged damages, injuries and/or losses suffered by Claimant, if any, proximately resulted from the breaches, negligence, fraud, and/or conduct of parties, persons and/or entities other than Respondents.

## COUNTERCLAIMS

29.     Respondents incorporate by reference the Preliminary Statement, Statement of Defense, and Affirmative Defenses in their entireties in the counterclaim below.

30.     Article 7 and specifically Section 7.1, sets forth the Sellers' indemnification obligations for breaches of the representations and warranties under the Purchase Agreement. Sections 7.1(a) - 7.1(a)(i) provide that each Seller "severally and not jointly, shall indemnify and hold harmless Buyer and the Millennium Group ("**Buyer Indemnitees**") from and against its Pro Rata Share of all Damages to Buyer Indemnitees attributable to:  (i) any breach of the representations and warranties of Millennium in Article 4." Accordingly, regardless of whether

Jason Feazell
March 28, 2016
Page 11

any individual Seller breached any representation or warranty, that Seller is severally responsible for any damages caused by a breach of the representations and warranties in Section 4.9.[7]

31.     Buyer is entitled to withhold any Non-Contingent Payment(s) provided it has reasonably and in good faith asserted an indemnification claim for damages under Section 7.1. (*See* Purchase Agreement Section 7.3 (a)-(b).) Respondents have timely availed themselves of their contractual rights. Section 7.3 in pertinent part provides:

> (a) If on any particular date there is determined to be an amount owing to a Buyer Indemnitee pursuant to Section 7.1, such amount shall be satisfied by offset against the Non-Contingent Payment that is next due and payable after such date or, to the extent such Non-Contingent Payment is insufficient to fully satisfy such offset (including as a result of prior offsets), against the subsequent Non-Contingent Payments in chronological order until such offset is fully satisfied.

> (b) If, on the date that any Non-Contingent Payment would otherwise be paid pursuant to Section 2.3, Buyer has reasonably and in good faith asserted an indemnification claim for Damages under Section 7.1 that is not precluded by this Article 7 (including under Section 7.6) and that remains unresolved, Buyer shall have the right to withhold from such Non-Contingent Payment an amount equal to the Damages in dispute (and only to the extent not already then being withheld); provided that upon the resolution of such claim, the portion (if any) finally determined to be owing to a Buyer Indemnitee shall be retained by Buyer, and the remaining portion (if any) shall be paid by Buyer to the Sellers in their Pro Rata Shares within five (5) Business Days following such resolution.

32.     Section 7.4 expressly excludes intentionally fraudulent misrepresentations by Millennium from the Sellers' limitations on liability. Accordingly, Respondents seek not only to withhold the 2nd, 3rd and 4th Non-Contingent Payments, but also seek all damages that flow from the breach of the representations and warranties as set forth in Article 4, including without limitation, return of the 1st Non-Contingent Payment in the amount of $900,000.

33.     Millennium's representations and warranties are set forth in Article 4 of the Purchase Agreement, with specific representations and warranties regarding the Company's financials outlined, in pertinent part, in Section 4.9(a):

> The Financial Statements have been prepared from the books and records of Millennium Group in accordance in all material respects (except as set forth in such Financial Statements) with GAAP, consistently applied and maintained

---

[7] Respondents need not name each Seller in the counterclaim. Per Section 2.7 of the Purchase Agreement, each Seller appointed Seller Representative to act on its/his behalf in any litigation or arbitration or other dispute involving the Purchase Agreement including matters pertaining to indemnification. Respondents have no information at this time to show that Sellers Nigel Sinclair or Guy East made any misrepresentations; under the Purchase Agreement, however, each Seller is liable on a several or pro rata basis for his or its percentage interest in the sale proceeds.

STROOCK & STROOCK & LAVAN LLP · LOS ANGELES · NEW YORK · MIAMI · WASHINGTON, DC
2029 CENTURY PARK EAST, LOS ANGELES, CA 90067-3086 TEL 310.556.5800 FAX 310.556.5959 WWW.STROOCK.COM

Jason Feazell
March 28, 2016
Page 12

throughout the period indicated (except that the unaudited Financial Statements are subject to year-end audit adjustments and do not include notes), and such Financial Statements present fairly and accurately in all material respects the consolidated financial position of the Millennium Group and the results of operations and cash flows of the Millennium Group for the periods covered thereby. The books of account and other financial records of the Millennium Group have been maintained in the Ordinary Course of Business and they are adequate for the purposes of the Millennium Business as currently conducted. Since December 31, 2013, there has been no material change in the accounting policies, principles, methods or practices, including any change with respect to reserves or allowances (whether for bad debts, impairment, contingent Liabilities, or otherwise), of the Millennium Group.

34.    Sellers are liable for breach of the foregoing representations and warranties by, among other things, Millennium providing materially false and misleading financial information concerning revenue, return reserves and participation liabilities in particular. As a result, EBITDA and EBITD were materially overstated at the time of Closing, which resulted in a transaction valuation (purchase price) much higher than what the Buyer would have closed the transaction under (if at all) had the EBITDA and EBITD been accurately characterized.

35.    Millennium purposefully made the untrue representations, omissions and concealments of material information as set forth herein. All Sellers are severally liable for such false representations. At the time Millennium made such untrue representations, omissions and concealments and took the actions set forth herein, Millennium knew such representations were false and made them with the specific intent to deceive and defraud Respondents and to induce Respondents to act in reliance and to close the Purchase Agreement transaction to Sellers' unjust advantage and Respondents' corresponding loss. Respondents were induced to enter into the Purchase Agreement and paid $36 million plus the 1st Non-Contingent Payment in reliance on Millennium's representations. At the time Millennium made such false representations, omissions and concealments, Respondents were unaware of the falsities thereof and believed the Financial Statements were complete and accurate as disclosed. Millennium had knowledge of the fact that the Financial Statements were indeed inflated and misleading, yet they went ahead with the false representations that lead to the sale to Respondents. Had Respondents known the actual facts, they would not have executed the Purchase Agreement or made such payments.

36.    An actual controversy has arisen and now exists between Claimant and Respondents over the parties' respective rights and duties under the Purchase Agreement: Respondents contend they are under no obligation to make any further Non-Contingent Payments to Sellers. A declaration by the arbitrator is necessary such that Respondents may ascertain their rights and duties under the Purchase Agreement not only for the Non-Contingent payment purportedly due on February 18, 2016, but also for the 3rd and 4th Non-Contingent Payments under the Purchase Agreement.

LA 51978537

STROOCK & STROOCK & LAVAN LLP • LOS ANGELES • NEW YORK • MIAMI • WASHINGTON, DC
2029 CENTURY PARK EAST, LOS ANGELES, CA 90067-3086 TEL 310.556.5800 FAX 310.556.5959 WWW.STROOCK.COM

Jason Feazell
March 28, 2016
Page 13

37. The foregoing actions and omissions give rise to claims sounding in indemnity, breach of contract, fraud and declaratory relief.

## RELIEF REQUESTED

Respondents request the Arbitrator rule as follows:

      a.    Deny Claimant's Statement of Dispute in its entirety;

      b.    Declare that the 2nd, 3rd, and 4th Non-Contingent Payments are no longer due and owing;

      c.    Award damages to Respondents as requested at the arbitration according to proof, including without limitation, repayment of the 1st Non-Contingent Payment with interest, damages resulting from the grossly inflated purchase price;

      d.    Award Respondents attorneys' fees, costs and other expenses to the extent permitted by law; and

      e.    Such other and further relief as the Arbitrator may deem proper.

This Statement of Defense and Counterclaim are submitted without prejudice to any other claims, rights, or damages that Respondents may have or seek as against Claimant or any third party(ies), all of which are expressly reserved. Respondents expressly reserve all rights to amend their Statement of Defense and Counterclaim as may be necessary.

Respectfully submitted,

John R. Loftus

STROOCK & STROOCK & LAVAN LLP • LOS ANGELES • NEW YORK • MIAMI • WASHINGTON, DC
2029 CENTURY PARK EAST, LOS ANGELES, CA 90067-3086 TEL 310.556.5800 FAX 310.556.5959 WWW.STROOCK.COM

# EXHIBIT 1

**From:**          Rex Bowring <Rex.Bowring@ouralchemy.com>
**Sent:**          Monday, July 07, 2014 10:45 AM
**To:**            'John Avagliano'
**Subject:**       June Return Reserve July 7.xlsx
**Attachments:**   June Return Reserve July 7.xlsx

Need to discuss appropriate June Return Reserve adjustment. Please note this proposed adjustment is compared to the May reserve of $837,000

**MILLENNIUM ENTERTAINMENT**
June 2014 Return Reserve
Update as of July7

| Title | Acct Grp | 2012 Totals | 2013 Totals | 2014 Sales & Returns | ITD 2014 Sales & 2014 Returns | Reserve % | Calculated Reserve | ITD 2014 Returns July 7 | June 2014 Net Reserve | Phase 4 DC Inventory $ @ Apr 30 | % Reserve to Phase 4 Inventory |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AS I LAY DYING | 1434 SEL | - | 24,750.00 | 100,110.32 | 124,860.32 | | | | | | |
| | RET | - | (326,360.91) | (77,241.57) | (403,602.48) | 41.0% | (165,477.02) | 124,860.32 | (40,616.70) | 59,298.00 | 68.5% |
| BROOKLYN CASTLE | 1423 SEL | - | 37,516.57 | 42,253.78 | 79,770.35 | | | | | | |
| | RET | - | (115,672.03) | (34,510.58) | (150,182.61) | 55.0% | (82,600.44) | 79,770.35 | (2,830.09) | - | |
| CRUSH | 1402 SEL | - | 287,803.42 | 28,205.12 | 316,008.54 | | | | | | |
| | RET | - | (728,402.03) | 22,787.14 | (705,614.89) | 45.0% | (317,526.70) | 316,008.54 | (1,518.16) | 4,995.00 | 30.4% |
| HELL BABY | 1437 SEL | - | - | 93,883.95 | 93,883.95 | | | | | | |
| | RET | - | (536,018.86) | (83,229.07) | (619,247.93) | 27.0% | (167,196.94) | 93,883.95 | (73,312.99) | 97,237.00 | 75.4% |
| HOME RUN | 1409 SEL | - | 34,578.81 | 275,402.50 | 309,981.31 | | | | | | |
| | RET | - | (1,139,337.98) | (326,316.20) | (1,465,654.18) | 30.0% | (439,696.25) | 309,981.31 | (129,714.94) | 181,627.00 | 71.4% |
| ICEMAN | 1401 SEL | - | 239,356.03 | 634,096.87 | 873,452.90 | | | | | | |
| | RET | - | (3,748,634.78) | (458,930.55) | (4,207,565.33) | 28.0% | (1,178,118.29) | 873,452.90 | (304,665.39) | 395,640.00 | 77.0% |
| KILLING SEASON | 1387 SEL | 56.80 | 207,413.18 | 341,802.20 | 549,215.38 | | | | | | |
| | RET | - | (4,635,873.24) | (333,390.81) | (4,969,264.05) | 12.0% | (596,311.69) | 549,215.38 | (47,096.31) | 87,942.00 | 53.6% |
| LITTLE BIRDS | 1346 SEL | - | 104,062.06 | 1,949.92 | 106,068.78 | | | | | | |
| | RET | (174,386.07) | (57,151.36) | (4,846.89) | (236,384.32) | 46.0% | (108,736.79) | 106,068.78 | (2,668.01) | 3,834.00 | 69.6% |
| MINDLESS BEHAVIOR: ALL AROUND | 1426 SEL | - | 276,505.18 | 317,379.78 | 593,884.96 | | | | | | |
| | RET | - | (1,193,991.01) | (17,963.13) | (1,211,954.14) | 50.5% | (612,036.84) | 593,884.96 | (18,151.88) | 21,588.00 | 84.1% |
| NINJA II | 1422 SEL | - | - | 192,521.83 | 192,521.83 | | | | | | |
| | RET | - | (999,871.89) | (513,056.37) | (1,512,928.26) | 21.0% | (317,714.93) | 192,521.83 | (125,193.10) | 170,882.00 | 73.3% |
| PAPERBOY, THE | 1369 SEL | - | 1,030,069.53 | 138,960.88 | 1,169,030.41 | | | | | | |
| | RET | (1,213,356.21) | (2,820,324.87) | (180,910.54) | (4,214,591.62) | 30.5% | (1,285,450.44) | 1,169,030.41 | (116,420.03) | 163,380.00 | 71.3% |
| PARKLAND | 1427 SEL | - | 2,093.55 | 1,586,738.30 | 1,588,831.85 | | | | | | |
| | RET | - | (4,099,920.28) | (751,192.41) | (4,851,112.69) | 47.0% | (2,280,022.96) | 1,588,831.85 | (691,191.11) | 988,401.00 | 69.9% |
| PLUSH | 1444 SEL | - | 23,714.68 | 84,873.46 | 108,588.14 | | | | | | |
| | RET | - | (161,275.42) | (12,931.87) | (174,207.29) | 67.5% | (117,589.92) | 108,588.14 | (9,001.78) | 13,362.00 | 67.4% |
| SO UNDERCOVER | 1400 SEL | - | 540,305.19 | 132,305.95 | 672,611.14 | | | | | | |
| | RET | (1,085.59) | (2,318,593.15) | 14,740.08 | (2,304,938.60) | 30.0% | (691,481.60) | 672,611.14 | (18,870.46) | 27,572.00 | 68.4% |
| SPIDERS | 1407 SEL | - | 525,178.19 | 134,676.16 | 659,854.35 | | | | | | |
| | RET | - | (1,556,572.42) | (15,154.42) | (1,571,726.84) | 48.0% | (754,428.88) | 659,854.35 | (94,574.53) | 132,152.00 | 71.6% |
| STOLEN | 1384 SEL | - | 1,080,984.64 | 88,140.74 | 1,169,125.38 | | | | | | |
| | RET | (2,937,122.16) | (2,746,338.47) | (206,148.39) | (5,889,609.02) | 20.5% | (1,207,369.85) | 1,169,125.38 | (38,244.47) | 80,466.00 | 47.5% |
| | | | 351,032.32 | 32,986.03 | 384,018.35 | | | | | | |

| Title | Acct Grp | 2012 Totals | 2013 Totals | 2014 Sales & Returns | ITD 2014 Sales &2014 Returns | Reserve % | Calculated Reserve | ITD 2014 Returns July 7 | June 2014 Net Reserve | Phase 4 DC Inventory $ @ Apr 30 | % Reserve to Phase 4 Inventory |
|---|---|---|---|---|---|---|---|---|---|---|---|
| STRAIGHT A'S | 1410 SEL | - | (854,166.10) | (42,986.03) | (897,152.13) | 43.0% | (385,775.42) | | (1,757.07) | - | |
| | RET | | | | | | | 384,018.35 | | | |
| STUCK IN LOVE | 1403 SEL | - | (1,218,109.80) | (574,416.58) | (1,792,526.38) | 50.0% | (896,263.19) | | (190,975.35) | 238,805.00 | 80.0% |
| | RET | | 87,434.54 | 617,853.30 | | | | 705,287.84 | | | |
| UPSIDE DOWN | 1404 SEL | - | (2,890,244.75) | (530,820.55) | (3,421,065.30) | 38.0% | (1,300,004.81) | | (239,741.32) | 313,265.00 | 76.5% |
| | RET | | 341,427.90 | 718,835.59 | | | | 1,060,263.49 | | | |
| WHAT MAISIE KNEW | 1396 SEL | - | (1,270,322.70) | (203,341.97) | (1,473,664.67) | 39.5% | (582,097.54) | | (18,788.45) | 28,833.00 | 65.2% |
| | RET | | 80,531.31 | 482,777.78 | | | | 563,309.09 | | | |
| WHEN CALLS THE HEART | 1440 SEL | - | (836,302.14) | (321,791.44) | (1,158,093.58) | 40.0% | (463,237.43) | | (65,995.29) | 104,746.00 | 63.0% |
| | RET | | | 397,242.14 | | | | 397,242.14 | | | |
| (One) | 1445 SEL | - | (56,836.62) | (461,832.57) | (518,669.19) | 35.0% | (181,534.22) | | (50,743.29) | 83,247.00 | 61.0% |
| | RET | | | 130,790.93 | | | | 130,790.93 | | | |
| BUCK WILD | 1544 SEL | - | - | (239,948.21) | (239,948.21) | 48.0% | (115,175.14) | | (14,581.77) | 20,055.00 | 72.7% |
| | RET | | | 100,593.37 | | | | 100,593.37 | | | |
| CHARLIE COUNTRYMAN | 1443 SEL | - | (976,458.45) | (764,692.43) | (1,741,150.88) | 49.0% | (853,163.93) | | (300,810.42) | 390,235.00 | 77.1% |
| | RET | | | 552,353.51 | | | | 552,353.51 | | | |
| HARPIES | SEL | - | - | (146,871.83) | (146,871.83) | 30.0% | (44,061.55) | | (42,740.95) | - | |
| | RET | | | 1,320.60 | | | | 1,320.60 | | | |
| EKHUMBA | 1424 SEL | - | (1,276,943.22) | (1,028,528.88) | (2,305,472.10) | 25.0% | (576,368.03) | | (207,021.47) | 268,064.00 | 77.2% |
| | RET | | | 369,346.56 | | | | 369,346.56 | | | |
| LIFE OF A KING | 1543 SEL | - | (1,100.19) | (409,665.92) | (410,766.11) | 18.0% | (73,937.90) | | (7,614.06) | 10,803.00 | 70.5% |
| | RET | | | 66,323.84 | | | | 66,323.84 | | | |
| ARTS PER BILLION | 1428 SEL | - | - | (1,096,212.00) | (1,096,212.00) | 30.0% | (328,863.60) | | (319,180.55) | - | |
| | RET | | | 9,683.05 | | | | 9,683.05 | | | |
| GAGAMUFFIN | 1560 SEL | - | - | (1,532,957.34) | (1,532,957.34) | 50.0% | (766,478.67) | | (477,122.67) | - | |
| | RET | | | 289,356.00 | | | | 289,356.00 | | | |
| MOB THE MOB | SEL | - | - | (1,089,845.94) | (1,089,845.94) | 30.0% | (326,953.78) | | (326,722.03) | - | |
| | RET | | | 231.75 | | | | 231.75 | | | |
| RUN | 1545 SEL | - | (221,666.19) | (94,458.19) | (316,124.38) | 50.0% | (158,062.19) | | (35,292.89) | - | |
| | RET | | | 122,469.30 | | | | 122,469.30 | | | |
| WHEN CALLS THE HEART 1-6 | 1545 SEL | - | - | (441,015.23) | (441,015.23) | 30.0% | (132,304.57) | 170.40 | (132,134.17) | - | |

Net Reserve July 2014    (4,145,591.71)
Estimated Catalog Reserve    (200,000.00)
Calculated Net Reserve    (4,345,591.71)

May 2014 Reserve Balance    (837,000.00)

Net Adjustment June    (3,508,591.71)

# EXHIBIT 2

| | |
|---|---|
| **From:** | John Avagliano <John.Avagliano@ouralchemy.com> |
| **Sent:** | Friday, July 25, 2014 9:01 PM |
| **To:** | 'Bill Lee' |
| **Subject:** | Re: June PL revised |
| **Attachments:** | 2A9195BF-E4F1-4D56-A222-521BA25F5489.png |

Virgo and Baker Tilly both have the June numbers..... Fortunately In the model we adjusted June down so the variance isn't too bad

July will be another challenge ... And we can't fix this one

Sent from my iPhone

On Jul 25, 2014, at 10:47 PM, "Bill Lee" <blee@millenniumentertainment.me> wrote:

> Does Virgo have the numbers? My call with Virgo was not very good, but clearly a miss in June to this level will have a major impact on the transaction. Let me know when you would like to connect.
>
> Virgo signed the SunTrust today.
>
> Take care,
>
> Bill
>
> As far as
>
> --
>
> **Bill Lee**
>
> CEO
> Millennium Entertainment
> 5900 Wilshire Blvd, 18th Floor
> Los Angeles, CA 90036
> Office: 310.893.6289 ext. 108
> Mobile: 214.907.4182
> Fax: 323.937.0750
> Email: blee@millenniumentertainment.me
>
> <2A9195BF-E4F1-4D56-A222-521BA25F5489.png>

---

**From:** John Avagliano <javagliano@millenniumentertainment.me>
**Date:** Friday, July 25, 2014 at 4:23 PM

1

**To:** Bill Lee <blee@millenniumentertainment.me>
**Subject:** Fwd: June PL revised

FYI.....we plan to review tomorrow morning prior to sending out.....EBITD is about 350k lower than forecast as we had a 100k negative adjustment booked at last minute.

Sent from my iPad

Begin forwarded message:

> **From:** George De La Cruz <gdelacruz@millenniumentertainment.me>
> **Date:** July 25, 2014 at 4:09:00 PM PDT
> **To:** John Avagliano <javagliano@millenniumentertainment.me>, Rex Bowring <rbowring@millenniumentertainment.me>
> **Subject: June PL revised**
>
> John,
>
> See the attached June 2014 PL.  Rex is suggesting we have a call tomorrow to make sure we have made the correct adjustments/explanations prior to sending out.
>
> Thanks,
>
> George

# EXHIBIT 3

| | | |
|---|---|---|
| **From:** | Rex Bowring <Rex.Bowring@ouralchemy.com> | |
| **Sent:** | Thursday, July 17, 2014 12:08 PM | |
| **To:** | 'John Avagliano' | |
| **Subject:** | NU Image Participation Liability at June 2014 | |
| **Attachments:** | Untitled attachment 00005.txt | |

Here is the projected Participation liability for NU Nu Image titles as of June 30, 2014 as compared to the December accrual in December 2013. Please note the June financials do not reflect the June estimated laibility. The majority of the liability increase is due to collection of receivables;

Nu Image Participation Liability
As of June 30, 2014

| | Actual Dec-13 | Estimated Jun-14 | Difference |
|---|---|---|---|
| Black Widow | 21,131.11 | 35,092.22 | 13,961.11 |
| The Code | 121,592.59 | 331,840.37 | 210,247.78 |
| Spiders | 550,325.73 | 599,766.29 | 49,440.56 |
| Bad Lieutenant | 163,496.95 | 310,095.55 | 146,598.60 |
| Elephant White | 73,106.44 | 51,133.39 | (21,973.05) |
| Trust | 213,088.28 | 295,018.86 | 81,930.58 |
| Blitz | 23,268.97 | 211,113.75 | 187,844.78 |
| Alien vs Alien | 9,101.56 | 16,230.85 | 7,129.29 |
| Tornado | 93,220.11 | 93,353.98 | 133.87 |
| Cyborg Soldier | 11,333.55 | 14,407.40 | 3,073.85 |
| Quantum Apocalypse | 18,776.54 | 19,154.69 | 378.15 |
| As Good As Dead | 62,002.52 | 63,042.79 | 1,040.27 |
| When Nietzsche Wept | 47,449.09 | 87,523.16 | 40,074.07 |
| **TOTALS** | 1,407,893.44 | 2,127,773.30 | 719,879.86 |

# EXHIBIT 4

**MILLENNIUM ENTERTAINMENT**
**Producer Liability Schedule**
**As of June 30, 2014**

| | Film# | Title | Net Producer Liability as of December 31, 2013 | JAN 2014 | FEB 2014 | MAR 2014 | APR 2014 | MAY 2014 | JUNE 2014 | Net Producer Liability as of June 30, 2014 |
|---|---|---|---|---|---|---|---|---|---|---|
| Participation Liability | 600 | Misc Dec 2013 Auto Reserve accrual | (82,521.31) | 82,521.31 | | | | | | |
| Participation Liability | 1352 | Bernie | (40,000.00) | | | | | | | |
| Participation Liability | 1250 | Code, The and Mrs. Reserve | (667,612.32) | | | | | | | |
| Participation Liability | 1296 | Bad Lieutenant | (163,496.95) | | | | | | 439,000.00 | 439,000.00 |
| Participation Liability | 1333 | Cool Dog | | | | | | (25,427.95) | (72,608.80) | (693,062.77) |
| Participation Liability | 1339 | Sacrifice | | | | | | | | (26,135.75) |
| Participation Liability | 1345 | Trespass | | | | | | | (49.76) | (49.76) |
| Participation Liability | 1402 | Crush | (113,267.31) | | | | | | (17,160.00) | (17,160.00) |
| Participation Liability | 1350 | HISSS | (1,000.00) | | | | | | (13,815.35) | (13,815.35) |
| Participation Liability | 1369 | Paperboy | | | | | | 72,461.50 | (40,805.81) | (40,805.81) |
| Participation Liability | 1427 | Parkland | (66,253.83) | (42,936.00) | (1,767.46) | (1,415,379.24) | (1,100,000.00) | 1,264,646.86 | 1,361,689.67 | (1,000.00) |
| Participation Liability | 1428 | Parts Per Billion | | | | 40,000.00 | | | (31,350.00) | (31,350.00) |
| Participation Liability | 1400 | Neil Baby | | | | | | | (23,100.00) | (23,100.00) |
| Participation Liability | 1400 | So Undercover | (1,239,538.88) | | | | | 237,950.21 | (1,001,608.67) | (1,001,608.67) |
| Participation Liability | 1407 | Spiders | (599,766.29) | | | | | | (599,766.29) | (599,766.29) |
| Participation Liability | 1443 | L(Love) | | | | | | | (54,345.10) | (54,345.10) |
| Participation Liability | 1560 | Ragamuffin | | | | | | | (3,300.00) | (3,300.00) |
| **23100** | | **Participation Liability** | **(2,973,496.89)** | **39,585.31** | **(1,767.46)** | **(1,375,379.24)** | **(1,100,000.00)** | **1,549,630.62** | **1,585,878.36** | **(2,279,557.36)** |

| | TITLE | Net Producer Liability as of December 31, 2013 | JAN 2014 | FEB 2014 | MAR 2014 | APR 2014 | MAY 2014 | JUNE 2014 | Net Producer Liability as of June 30, 2014 |
|---|---|---|---|---|---|---|---|---|---|---|
| Accrued MG | KUMBA | | | | | | | | |
| Accrued MG | NINJA II | | | | | | | | |
| Accrued MG | PARTS PER BILLION | (1,080,000.00) | 1,080,000.00 | | | | | | |
| Accrued MG | PUNCTURE | (800,000.00) | 800,000.00 | | | | | | |
| Accrued MG | RAMPART | (425,000.00) | | | 425,000.00 | | | | |
| Accrued MG | RED LIGHT | | | | | | | | |
| Accrued MG | ROB THE MOB | (1,200,000.00) | | | 1,200,000.00 | | | | |
| Accrued MG | SACRIFICE | | | | | | | | |
| Accrued MG | STOLEN | | | | | | | | |
| Accrued MG | STUCK IN LOVE | | | | | | | | |
| Accrued MG | TRESPASS | | | | | | | | |
| Accrued MG | TRUST | | | | | | | | |
| Accrued MG | UPSIDE DOWN | | | | | | | | |
| Accrued MG | WHAT MAISIE KNEW | | | | | | | | |
| Accrued MG | WHEN CALLS THE HEART | | | | | | | | |
| Accrued MG | 1363 ACT OF VENGENCE | (150,000.00) | | | | | | | (150,000.00) |
| Accrued MG | 1444 AUTOMATA | (1,200,000.00) | | | | | | | (1,200,000.00) |
| Accrued MG | 1546 BEFORE I GO TO SLEEP | (2,700,000.00) | | | | | | | (2,700,000.00) |
| Accrued MG | 1554 ELIZA GRAVES | (2,800,000.00) | | | | | | | (2,800,000.00) |
| Accrued MG | 1549 FADING GIGOLO | (2,800,000.00) | | | | 1,980,000.00 | | | (2,800,000.00) |
| Accrued MG | 1547 GOOD PEOPLE | (150,000.00) | | 180,000.00 | | | | | |
| Accrued MG | 1559 HARPES | (22,500.00) | | | | | | | (22,500.00) |
| Accrued MG | 1359 INTRUDERS | (150,000.00) | | | | 375,000.00 | 220,000.00 | | (150,000.00) |
| Accrued MG | 1387 KILLING SEASON | (2,425,000.00) | | | | | | | (2,250,000.00) |
| Accrued MG | 1549 LIFE OF A KING | (194,978.60) | | | | 14,978.60 | | | |
| Accrued MG | 1449 MADAME BOVARY | (675,000.00) | | | | 100,000.00 | | | (675,000.00) |
| Accrued MG | 1560 RAGAMUFFIN | | | | (100,000.00) | | | | |
| Accrued MG | 1441 REACH ME | (900,000.00) | | | | | | 765,000.00 | (135,000.00) |

| Account / Title | C1 | C2 | C3 | C4 | C5 | C6 | C7 | C8 | C9 |
|---|---|---|---|---|---|---|---|---|---|
| **24060 Accrued MG** | | | | | | | | | |
| 1548 THE KIDNAPPING OF FREDDY HEINKEN | (2,250,000.00) | | | | | | | | (2,250,000.00) |
| 1561 WHEN CALLS THE HEART V.1 | | | (150,000.00) | 15,000.00 | | 120,000.00 | | | (15,000.00) |
| 1562 WHEN CALLS THE HEART V.2 | | | (150,000.00) | 15,000.00 | | 120,000.00 | | | (15,000.00) |
| 1563 WHEN CALLS THE HEART V.3 | | | (150,000.00) | 15,000.00 | | 120,000.00 | | | (15,000.00) |
| 1564 WHEN CALLS THE HEART V.4 | | | (150,000.00) | 15,000.00 | | 120,000.00 | | | (15,000.00) |
| 1565 WHEN CALLS THE HEART V.5 | | | (150,000.00) | 15,000.00 | | 120,000.00 | 120,000.00 | | (15,000.00) |
| 1566 WHEN CALLS THE HEART V.6 | | | (150,000.00) | | | | 120,000.00 | | (150,000.00) |
| 1570 PING PONG SUMMER | | | (150,000.00) | | | | | | (150,000.00) |
| 1571 WHEN CALLS THE HEART V.6 | | | | | | | | | (110,000.00) |
| 1572 ELSA AND FRED | | | | | | | | | (210,000.00) |
| 1578 GOD ONLY KNOWS | | | | | | | | | (25,000.00) |
| **24060 Accrued MG** | (22,172,478.00) | 3,080,000.00 | (720,000.00) | 400,000.00 | 1,934,978.00 | 470,000.00 | 1,065,000.00 | | (16,002,500.00) |
| 1296 Bad Lietenant P&A ADV-POLSKY | | | | | | | | | |
| MG Bad Lietenant | | | | | | | | | |
| **24071 Accrued MG** | | | | | | | | | |
| **Ultimate Part. Liability** | | | | | | | | | |
| 1365 A LITTLE BIT OF HEAVEN | (1,408,065.00) | | | | | | 356,076.81 | | (1,052,038.19) |
| 1363 ACT OF VENGEANCE | (85,626.00) | | | | | | | | (85,626.00) |
| 1375 BABY MAKERS | (122,884.00) | | | | | | | | (122,884.00) |
| 1352 BERNIE | (1,271,483.00) | | | | | | 96,244.52 | | (1,175,236.48) |
| 1343 FAKE 2012 | (16,796.00) | | | | | | | | (16,796.00) |
| 1409 HOME RUN | (368,536.00) | | | | | | | | (368,536.00) |
| 1387 KILLING SEASON | (1,646,701.00) | | | | | | | | (1,646,701.00) |
| 1422 NINJA II | (215,596.00) | | | | | | | | (215,596.00) |
| 1427 PARKLAND | (2,148,513.00) | | | | | 1,100,000.00 | 1,048,513.00 | (1,651,491.79) | (1,651,491.79) |
| 1410 STRAIGHT A'S | (112,291.00) | | | | | | | | (112,291.00) |
| 1404 UPSIDE DOWN | (93,389.00) | | | | | | | | (93,389.00) |
| 1440 WHEN CALLS THE HEART | (91,714.00) | | | | | | | | (91,714.00) |
| **24050 Ultimate Part. Liability** | (7,581,592.00) | | | | | 1,100,000.00 | 1,500,784.33 | (1,651,491.79) | (6,632,899.46) |
| **Total** | (32,727,906.89) | 3,119,585.31 | (721,767.46) | (975,379.24) | 1,934,978.00 | 3,520,414.95 | 935,378.51 | (1,651,491.79) | (24,914,696.82) |

**Participation Liability Detail (the Code and Misc. Reserve)**

| | |
|---|---|
| When Nietzsche Wept | 47,449.09 |
| As Good as Dead | 61,224.68 |
| Quantum Apocalypse | 18,543.91 |
| Cyborg Soldier | 11,333.54 |
| Tornado | 93,220.11 |
| Black Widow | 21,131.11 |
| The Code | 121,592.59 |
| Blitz | 23,268.97 |
| Trust | 213,088.28 |
| Elephant White | 73,106.44 |
| Other | 9,101.55 |
| **Total** | 693,060.27 |

1

**PROOF OF SERVICE**

2    STATE OF CALIFORNIA          )
                                   )    ss
3    COUNTY OF LOS ANGELES        )

4        I am employed in the County of Los Angeles, State of California, over the age of eighteen
years, and not a party to the within action. My business address is: 2029 Century Park East, Los
5    Angeles, CA 90067-3086.

6        On March 28, 2016 I served the foregoing document(s) described as: **STATEMENT AND
DEFENSE AND COUNTERCLAIM OF RESPONDENTS CALRISSIAN LP, VIRGO
7    SOCIETAS PARTNERSHIP III (ONSHORE), L.P., VIRGO SOCIETAS PARTNERSHIP
III (OFFSHORE), L.P., AND VIRGO INVESTMENT GROUP LLC** on the interested parties
8    in this action as follows:

9                                    Robert M. Schwartz
                                     Michael H. Strub, Jr.
10                                   Irell & Manella LLP
                                     1800 Avenue of the Stars, Suite 900,
11                                   Los Angeles, CA 90067
                                     *rschwartz@irell.com*
12                                   *mstrub@irell.com*

13

14    ☐    **(VIA PERSONAL SERVICE)**  By causing the document(s), in a sealed envelope, to
           be delivered to the person(s) at the address(es) set forth above.
15

16    ☐    **(VIA U.S. MAIL)**  In accordance with the regular mailing collection and processing
           practices of this office, with which I am readily familiar, by means of which mail is
17         deposited with the United States Postal Service at Los Angeles, California that same
           day in the ordinary course of business, I deposited such sealed envelope, with postage
           thereon fully prepaid, for collection and mailing on this same date following ordinary
18         business practices, addressed as set forth above.

19    ☒    **(VIA E-MAIL)**  Based on a court order or an agreement of the parties to accept
           service by e-mail, I caused the documents to be sent to the persons at the e-mail
20         addresses listed above.

21        I declare that I am employed in the office of a member of the bar of this court, at whose
direction the service was made.
22

23        I declare under penalty of perjury under the laws of the State of California that the above is
true and correct.

24        Executed on March 28, 2016, at Los Angeles, California.

25

26    _____          _____
          Diane Smith
      [Type or Print Name]                [Signature]
27

28

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Los Angeles, California 90067-3086

-1-

LA 51980483