**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CALRISSIAN LP,<br><br>                Debtor. | Chapter 7<br>Case No. 17-10356 (KG)<br><br>**Hrg. Date: 3/12/18 at 11:00 a.m.**<br>**Obj. Deadline: 3/8/18 at 12:00 p.m.**<br>(by agreement of the parties)<br><br>Related D.I. 52 |

**SUNTRUST BANK'S (I) OBJECTION TO DEBTOR'S MOTION FOR
ENTRY OF AN ORDER DISMISSING THE CHAPTER 11 CASE, AND (II) REQUEST
FOR CONVERSION OF THE CASE TO A CASE UNDER CHAPTER 7**

SunTrust Bank, as Administrative Agent ("SunTrust")[1] for itself and for certain other lenders (collectively, with SunTrust in its capacity as a lender, the "Lenders"), through its undersigned counsel, hereby submits this (i) objection to the Debtor's Motion for Entry of an Order Dismissing the Chapter 11 Case (the "Motion to Dismiss"), and (ii) request for conversion of the case to a case under Chapter 7 (collectively, the "Objection"). In support of its Objection, SunTrust respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Calrissian LP ("Calrissian" or the "Debtor"), an entity with more than $40 million in liabilities, acknowledges in the Motion to Dismiss that it has no operations and no prospect of a successful reorganization. It thus proposes, after a full year, to dismiss this case in exchange for a *de minimis* cash contribution from the Debtor's parent entity to pay U.S. Trustee "costs". The Motion to Dismiss is nothing more than a brazen, insider-engineered tactic to try to evade independent scrutiny and a full investigation of potential claims. The Debtor has potential assets

---

[1] For the avoidance of doubt, and except as otherwise noted herein, any reference to "SunTrust" in this Objection shall mean SunTrust in its capacity as Administrative Agent for the Lenders, in accordance with and subject to the terms and conditions of the Financing Documents.

in the form of claims against its parent and other insider entities, certain of their affiliates and other third parties. These claims should be evaluated and, if appropriate, prosecuted by a trustee in a chapter 7 case, rather than being swept under the rug and disposed of following dismissal. As stakeholders holding the largest claims in this chapter 11 case—and thus keenly aware of the relief sought—SunTrust and the Lenders object to the relief requested, request that the Motion to Dismiss be denied, and seek the conversion of the chapter 11 case to a case under chapter 7.

2. Calrissian is essentially an investment vehicle with no operations or independent employees. Since its formation, Calrissian has been entirely controlled, with no apparent degree of separateness, by its parent, the Virgo Entities.[2] Under the direction of the Virgo Entities, Calrissian purchased Our Alchemy, LLC ("Alchemy") in 2014, a transaction for which the Lenders provided financing. The Lenders' claims against the Debtor's estate flow directly from its mismanagement of Alchemy, which led to Alchemy's insolvency, as well as claims arising under the Guaranty Agreement (as defined below) totaling more than $40 million.

3. Such mismanagement was ultimately attributable to the Virgo Entities. Thus, the Calrissian estate—among others (including SunTrust and the Lenders)—may have potential claims against the Virgo Entities, including claims for misrepresentation, alter ego, breach of fiduciary duty, and causes of action arising under Bankruptcy Code sections 547, 548, and 550, among others.

4. Now, while still under the control of the Virgo Entities, Calrissian seeks to have this case dismissed rather than have a trustee investigate potential claims against the Virgo Entities and their affiliates, and otherwise administer the Debtor's estate for the benefit of creditors. Such a dismissal would serve the interests of the Virgo Entities, but it is not in the best interests of Calrissian's creditors. This Court should instead convert this case to a case under

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion to Dismiss.

chapter 7, and allow an independent trustee to evaluate and, if appropriate, pursue any potential claims that could bring assets into the estate.

## BACKGROUND

5.     SunTrust is Administrative Agent for the Lenders under that certain Revolving Credit and Term Loan Agreement, dated as of September 4, 2014, as amended by that certain Amended and Restated Revolving Credit and Term Loan Agreement dated as of July 9, 2015, and as further amended by that certain Amendment No. 1 and Waiver to the Credit Agreement, dated as of December 18, 2015 (the "Credit Agreement").  Under the terms of the Credit Agreement, the Lenders agreed to extend certain loans to Alchemy under a first-lien facility consisting of: (i) a revolving credit facility (the "Revolver") of the lesser of (A) $26,000,000, and (B) a borrowing base calculation consisting of eligible accounts receivable and eligible inventory; and (ii) a term loan (the "Term Loan" and, together with the Revolver, the "Loans") in the principal amount of $33,500,000.

6.     In 2014, under the direction of the Virgo Entities, Calrissian entered into an agreement with Nu Image to purchase Alchemy.  The Loans were instrumental in financing that acquisition.

7.     To induce the Lenders to extend the Loans, Calrissian entered into a Guaranty and Security Agreement, dated as of September 4, 2014, as amended by that certain Omnibus Amendment of Certain Collateral Documents, dated as of July 9, 2015 (as amended, supplemented or modified from time to time, the "Guaranty Agreement" and, together with the Credit Agreement, the "Financing Documents").

8.     Pursuant to the terms of the Guaranty Agreement, Calrissian (i) granted to SunTrust a first-priority security interest in substantially all of Calrissian's property, and (ii)

unconditionally and irrevocably guaranteed, jointly and severally, Alchemy's obligations on the Loans.

9. Calrissian is itself a subsidiary of the Virgo Entities, and is entirely controlled by the Virgo Entities. As noted above, it appears that Calrissian has no independent business operations or employees.

10. On July 1, 2016 (the "Alchemy Petition Date"), Alchemy and its affiliate each filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") with this Court.[3] As of the Alchemy Petition Date, the Lenders' claims against Alchemy were at least approximately $46.3 million.

11. Prior to the chapter 7 filing, Alchemy had been in default under the Loans by, among other things, failing to prepay certain obligations, failing to maintain certain EBITDA thresholds, and failing to maintain certain liquidity thresholds, as required by the terms of the Credit Agreement.

12. As a result, and as permitted by the terms of the Credit Agreement, on or about June 15, 2016, SunTrust notified Alchemy and Calrissian that all obligations owed under the Credit Agreement were due and payable immediately and accelerated the obligations.

13. Calrissian failed to pay SunTrust the amounts immediately due and payable under the Loan Documents. On August 5, 2016, SunTrust commenced a suit (the "Guaranty Litigation") against Calrissian in New York state court for breach of contract arising out of the Guaranty Agreement, seeking the amounts owed by Calrissian under the Loan Documents (the "Guaranty Claim").

---

[3] The cases are styled *In re Our Alchemy, LLC* (Case No. 16-11596 (KG)) and *In re Anderson Digital, LLC* (Case No. 16-11597 (KG)), and are pending in this Court.

{01298743;v2 }    4

14. On February 15, 2017 (the "Petition Date"), Calrissian filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

**ARGUMENT**

15. The Court should not simply dismiss Calrissian's Chapter 11 Case, as doing so is not in the best interests of creditors. Bankruptcy Code section 1112(b) provides, with certain exceptions, that upon the request of a party in interest and a showing of "cause," the court shall convert or dismiss a chapter 11 case, whichever is in the best interests of creditors.

16. SunTrust agrees with the Debtor that there is "cause," as that term is defined in section 1112(b), to redirect this case on a different path. Calrissian asserts that a chapter 11 reorganization is no longer possible by reason of the Debtor's inability to obtain a recovery in the Arbitration and given the size of the Guaranty Claim. Moreover, the Debtor's loss in the Arbitration has resulted in significant additional claims against it. As noted in the Motion to Dismiss, one "cause" for dismissal or conversion is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). SunTrust agrees that the Debtor's inability to obtain a substantial award in its favor in the Arbitration constitutes a diminution in value to the estate. And, in light of the size of the Guaranty Claim, there is no reasonable likelihood of rehabilitation for Calrissian.

17. However, the Lenders—collectively Calrissian's largest creditors—dispute that dismissal is in the best interest of creditors. When considering conversion or dismissal, "[the creditors] will be the best judge of their own best interests . . . ." *In re Mattick*, 496 B.R. 792, 803 (Bankr. W.D.N.C. 2013). Thus, this Court should convert the case to a case under chapter 7.

18. There is no reason to believe, much less assume, as Calrissian does, that Calrissian has *no* assets to liquidate. And conversion is preferred to dismissal when there are

potential assets to administer. *See In re Jensen*, 425 B.R. 105, 111 (Bankr. S.D.N.Y. 2010) ("The Court finds that conversion is preferable in light of the fact that Debtor has potentially valuable assets to administer in the estate."); *see also In re Fonke*, 301 B.R. 809, 812 (Bankr. S.D. Tex. 2004) (same). Calrissian is a wholly-owned and controlled subsidiary of the Virgo Entities. At all relevant times, Calrissian's affairs have been managed by employees of the Virgo Entities. SunTrust believes that Calrissian may very well have claims against the Virgo Entities and others that have not been explored, as Calrissian remains under their control. A trustee should be appointed to investigate and prosecute claims as appropriate.

19. Any increased expenses associated with a chapter 7 bankruptcy should be minimal. SunTrust expects that claims to be investigated by a trustee in a Calrissian chapter 7 case are likely to be similar and may possibly overlap with those being considered already by the chapter 7 trustee for Our Alchemy. Moreover, because the Virgo Entities are jointly and severally liable on the Nu Image arbitration award, this award likely will be paid by the Virgo Entities even if the case is not dismissed (if not it will simply be an unsecured claim against Calrissian, subject to allowance or disallowance). Through the Motion to Dismiss and the arranged settlement with Nu Image—the terms of which are not disclosed—the Debtor also improperly attempts to evade the scrutiny of the parties in interest and a review by this Court that would stem from a 9019 motion. This shortcut should not be condoned.

20. The offer of the Virgo Entities to pay "administrative expenses" related to the arbitration is similarly specious, since Calrissian has not even provided evidence of any such "expenses". To SunTrust's knowledge, the only administrative expenses that currently exist are the accrued and unpaid U.S. Trustee Fees. The Debtor never bothered to file a retention application for any counsel and, having placed Calrissian in this chapter 11 case to provide the

Virgo Entities with optionality, they should be compelled to pay the U.S. Trustee's fees. Accordingly, the Court should disregard the vague and unfounded suggestion by the Debtor of "savings" to the estate if the case is dismissed.[4] As this Court has not approved the retention of any of Calrissian's supposed professionals, any fee claims such professionals assert are not entitled to administrative expense priority. *See F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 108-09 (3d Cir. 1988) (denying compensation to debtor's leasing broker who "failed to . . . obtain prior approval of his appointment").

21.  It will be more costly to dismiss. The Debtor suggests that dismissal will "allow for a more efficient process in which SunTrust seeks to collect directly from the Debtor by exercising its right as a secured lender." Mot. at 8. To the contrary, this is certain to be a more expensive undertaking, and will undoubtedly lead back to this Court or another bankruptcy court in any event. If Calrissian, which professes to have no assets of value, chooses not to contest the Guaranty Litigation, then a judgment will be entered and it will be forced to liquidate. If Calrissian chooses to contest the Guaranty Litigation, it will continue to accrue legal fees, but will nevertheless have a judgment entered against it and will still be forced to liquidate. In that event, it will again face chapter 7 proceedings. A chapter 7 trustee can accomplish the a wind down of the estate far more efficiently and independently than the Debtor.

---

[4] In fact, counsel to the Debtor has not filed any retention application or held itself out as proposed counsel to the debtor in possession. This appears to be a blatant attempt to keep the Debtor's options open, with counsel flying under the radar, while it attempted to pursue arbitration counterclaims against Nu Image, an effort that was fruitless and ultimately resulted in an award *against* the Debtor and the Virgo Entities.

**CONCLUSION**

22.    Accordingly, SunTrust respectfully requests that the Court (a) deny the Debtor's Motion to Dismiss, (b) instead convert the Debtor's case to a case under chapter 7, and (c) grant such further relief as the Court deems just, proper and equitable.

Dated: March 8, 2018        **ASHBY & GEDDES, P.A.**

*/s/ Ricardo Palacio*
_____
Ricardo Palacio (DE No. 3765)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
Telephone: (302) 654-1888
rpalacio@ashbygeddes.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
David P. Simonds (*pro hac vice* pending)
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067
Telephone: (310) 229-1000
dsimonds@akingump.com

William F. Mongan (*pro hac vice* pending)
1 Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
wmongan@akingump.com

*Counsel to SunTrust Bank*