# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| CALRISSIAN LP | ) Case No. 17-10356 (KG) |
| Debtor. | ) |
| | ) Re: D.I. 90 |

## VIRGO ENTITIES' REPLY IN FURTHER SUPPORT OF ITS MOTION TO QUASH THE DOCUMENT SUBPOENA DIRECTED TO NU IMAGE, INC.

Virgo Investment Group, LLC ("Virgo"), Virgo Societas Partnership III (Onshore), L.P. ("Virgo Onshore"), and Virgo Societas Partnership III (Offshore), L.P. ("Virgo Offshore"), (collectively, Virgo Onshore and Virgo Offshore are the "Investors"), hereby respectfully file this *Reply in Further Support of its Motion to Quash the Document Subpoena Directed to Nu Image, Inc.* (the "Motion to Quash") [D.I. 76]. This reply is necessary to address and clarify issues raised in the *Objection to Virgo Entities Motion to Quash the Document Subpoena Directed to Nu Image, Inc.* [D.I. 90] (the "Objection") filed by SunTrust Bank N.A. ("SunTrust"), as Administrative Agent for itself and for certain other lenders (collectively, with SunTrust in its capacity as a lender, the "Lenders"). In support of the Motion to Quash, the Investors and Virgo respectfully state as follows:

### Arguments and Authorities

1.  The Motion to Quash SunTrust's Rule 2004 subpoena (the "Subpoena") seeking documents relating to the arbitration proceedings brought by Nu Image, Inc. ("Nu Image") against both Calrissian, LP (the "Debtor" or "Calrissian"), the Investors and Virgo (the "Arbitration") should be granted for the following reasons:

{00023737. }

    (a)  SunTrust cannot state any good cause basis for violating the public policy, honored in federal and state courts, favoring the protection of confidential arbitration;

    (b)  SunTrust attempts to misuse Rule 2004 to inappropriately seek redress from Calrissian's investors for claims that either belong to the Alchemy Trustee, which the Trustee has brought now, or claims that are really claims the banks want to bring for their own account, but have no legal basis to bring, to blame the Virgo investors for bank losses; and

    (c)  the Investors and Virgo have not waived their expectation of privacy in the entirety of the Arbitration record through the limited disclosure of certain Arbitration materials.

    2.    As of the commencement of this Chapter 11 case, the Debtor, a holding company with no operations or employees, believed it had two assets: the equity interest in the chapter 7 debtor, Our Alchemy, LLC, and contingent claims shared by the Debtor with the Investors and Virgo against Nu Image, the seller of Our Alchemy. *Debtor's Motion for Entry of an Order Dismissing the Chapter 11 Case* ("Motion to Dismiss") [D.I. 52] ¶ 4.  Despite their hopeful expectations, the Debtor, the Investors and Virgo lost the Arbitration.  Pursuant to the Subpoena, SunTrust now seeks to obtain "[a]ll documents filed or submitted by any party in connection with the Nu Image Arbitration," "[a]ll exhibits submitted in connection with the Nu Image Arbitration," "[a]ll transcripts Relating to the Nu Image Arbitration," and "[a]ll Documents and Communications Relating to the Nu Image Arbitration." Subpoena [D.I. 76].

{00023737. }

2

### A. SunTrust Has Failed to Show Good Cause for Violating the Public Policy Favoring the Protection of Confidential Arbitration Proceedings

3. Public policy favoring arbitration compels the Court to grant the Motion to Quash. *See Pasternak v. Dow Kim*, No. 10 CIV. 5045 LTS JLC, 2013 WL 1729564, at *3 (S.D.N.Y. Apr. 22, 2013). Conflating the argument set forth by the Investors and Virgo, SunTrust claims that the arbitration and confidentiality provision cited in the Motion to Quash is "not binding" on SunTrust or this Court. Objection [D.I. 90] ¶ 5. But the Investors and Virgo do not seek to enforce a contractual provision against SunTrust; rather, the Investors and Virgo seek to uphold fundamental public policy favoring the protection of confidential arbitration proceedings. *See Gillette Co. v. Dollar Shave Club, Inc.,* Civ. No. 15-1158-LPS-CJB, 2017 U.S. Dist. LEXIS 148775 *7 (D. Del. Sept. 6, 2017) (noting that "courts tend to keep information relating to arbitration confidential"); *see also ITT Educational Services, Inc. v. Arce*, 533 F.3d 342, 345 (5th Cir. 2008) (upholding a preliminary injunction granted by the district court enjoining prior plaintiffs to an arbitration from disclosing confidential arbitration material as disclosure would result in irreparable harm); *see also Pasternak*, 2013 WL 1729564, at *3 (holding that "[e]ven if the Court were to construe the subpoena as proper in scope and otherwise timely, the fact that it seeks testimony and other materials from a confidential arbitration is a barrier that cannot be overcome."); *see also Cont'l Cas. Co. v. BorgWarner*, No. CV N15M-05-009, 2016 WL 1169107, at *3 (Del. Super. Ct. Mar. 15, 2016), *reconsideration denied sub nom. Cont'l Cas. Co., et al. v. Borgwarner Inc., et al.*, No. CV N15M-05-009, 2016 WL 3909467 (Del. Super. Ct. July 14, 2016), *aff'd sub nom. BorgWarner, Inc. v. First State Ins. Co.*, 163 A.3d 708 (Del. 2017), *and aff'd sub nom. BorgWarner, Inc. v. First State Ins. Co.*, 163 A.3d 708 (Del. 2017).

4.      SunTrust, however, asks the Court to disregard compelling public policy favoring the protection of confidential arbitration proceedings and follow the Seventh Circuit's holding in *Gotham Holdings, LP v. Health Grates, Inc.* Objection [D.I. 90] ¶ 5. But *Gothham Holdings* is inapplicable here, as the Investors and Virgo do not seek to "cut off" SunTrust's discovery under the Federal Rules of Civil Procedure by enforcing a contractual provision against it. Rather, the Investors and Virgo seek to maintain the contemplated confidentiality of their Arbitration record from the Nu Image Arbitration—proceedings that were not conducted with the procedural safeguards and accoutrements that accompany judicial proceedings. Public policy favors the protection of confidential arbitration proceedings, as the abrogation this protection would "undeniably discourage future parties from engaging in arbitration." *See BorgWarner*, 2016 WL 1169107, at *3.

5.      In its Response, SunTrust plucks inapplicable language, used outside the context of anything relevant to the issues here, from the holding in *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* for its contention that "[t]here is no similar policy favoring arbitration under federal law." Objection [D.I. 90] ¶ 6. The Court in *Volt* was determining whether a contractual choice-of-law clause incorporated State law rules of arbitration into the parties' agreement, and held that "[t]here is no federal policy favoring arbitration ***under a certain set of procedural rules***; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 469, 109 S. Ct. 1248, 1250, 103 L. Ed. 2d 488 (1989) (emphasis added).

6.      Through the enactment of the Federal Arbitration Act ("FAA"), Congress "establishe[d] a strong federal policy in favor of the resolution of disputes through arbitration."

*Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (U.S. 1983) (noting that the FAA establishes "a liberal federal policy favoring arbitration agreements."). SunTrust's efforts to circumvent this strong federal policy favoring arbitration and the attendant confidentiality protections associated with such proceedings should be denied, as the Investors' and Virgo's expectation of privacy far outweigh the need for the Arbitration materials which are entirely unrelated to the Debtor or the administration of the estate. Accordingly, the Motion to Quash should be granted.

      **B.**    **The Documents Sought By SunTrust Are Outside the Permissible Use of Rule 2004 Subpoenas**

      7.    Rule 2004 only permits a party in interest to seek documents and information that relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." FED. R. BANKR. P. 2004(b). SunTrust speciously claims that the intent of its Subpoena is to "investigate the demise of the Estate's only asset" and the "incurrence of substantial additional liabilities." Objection [D.I. 90] ¶ 4. But, as SunTrust is aware, the documents requested by SunTrust have nothing to do with any liabilities of the Debtor. And SunTrust's so-called investigation into the Arbitration Proceedings on its face far exceeds the enumerated boundaries of Rule 2004; it seeks instead to try to find some basis to hold the Investors (who have lost over $47 million themselves) liable to the Lenders for the Lenders' losses.

      8.    The overwhelming majority of the materials SunTrust seeks are unrelated to the Debtor or the administration of the estate. As evidenced by the express language of the Subpoena, SunTrust seeks to obtain "[a]ll documents filed," "[a]ll exhibits submitted," and "[a]ll transcripts Relating to the Nu Image Arbitration." Subpoena [D.I. 73]. SunTrust's requests

largely encompass confidential arbitration transcripts and exhibits—many of which were originally created prior to the Debtor's existence—by the Investors and their advisor, Virgo, and its partners. SunTrust also claims that the Subpoena will enable it to examine "the incurrence of substantial additional liabilities." Objection [D.I. 90] ¶ 4. But the Debtor did not incur any additional liabilities as a result of the Nu Image Arbitration. Rather, as SunTrust is well aware, the financial burden of the $4 million Arbitration award and the expenses incurred in connection with the proceedings, including a subsequent appeal, were *entirely* borne by the Investors and Virgo, adding to investor losses.

9. SunTrust has failed to show good cause for the documents it seeks, as SunTrust has failed to articulate or identify any asset, liability or conduct of the Debtor that will be explored or discovered through the execution of its Subpoena.

10. Rather than seeking an examination of documents or information related to the Debtor, SunTrust expressly states that it seeks to "examine the conduct of the Arbitration." Objection [D.I. 90] ¶ 4. As SunTrust knows, the Arbitration was initiated by Nu Image (Alchemy's previous owner) against the Debtor, the Investors and Virgo for the payment of the remaining $4 million of the purchase price to acquire Alchemy (f/k/a Millennium). In response, the Debtor, the Investors and Virgo filed a counterclaim alleging that Nu Image misrepresented the financial condition of Alchemy causing the Investors significant damage that should preclude the obligation to pay the remaining $4 million. Despite these efforts, the counterclaims filed against Nu Image in the Arbitration were unsuccessful.

11. SunTrust's Subpoena does not seek information about a liability of the Debtor. The Investors paid the $4 million post-closing payment and the attorneys' fees associated with losing the arbitration (a loser-pays proceeding), as SunTrust and the other Lenders well know.

The Debtor incurred *no* damages or liabilities from the proceeding whatsoever and did not incur "substantial additional" liabilities as SunTrust suggests; rather, the Debtor actually *avoided* liability for the $4 million post-closing payment by having the guarantors of that payment, the Investors, pay it instead. Accordingly, there is no liability of the Debtor arising from the Arbitration for SunTrust to investigate.

12. Further, SunTrust's Subpoena does not seek information about the "acts, conduct or property" of the Debtor. The Arbitration involved claims that the seller of Alchemy made misleading statements to the Investors and Virgo causing them to make the decision to fund equity into Calrissian. By definition Calrissian did not exist when those decisions were made because Calrissian was created to receive the financing to purchase and hold the asset: Alchemy. *See* Motion to Dismiss [D.I. 52] ¶ 5. SunTrust is not investigating a claim of the Debtor. Instead, SunTrust is attempting to determine what the Investors may have known and find a way to blame the Investors for the Lenders' losses (adding insult to injury, as the Investors themselves have lost over $47 million). A Rule 2004 subpoena is not permitted for this purpose: (1) the Investors have no duty to the Lender creditors; and (2) the Investors' investment process does not give the Debtor, Calrissian, the holding company, a claim.

  C. Finally, to the extent SunTrust suggests that it wishes to look into the arbitration to find information about Alchemy's directors' performance or alleged mismanagement, by the very nature of the arbitration claims, which SunTrust is well aware of because it received the arbitration pleadings, the proceedings concerned misrepresentations *prior* to Alchemy changing hands and changing management. The Arbitration had *absolutely nothing to do* with the managerial performance of Calrissian's appointed directors of Alchemy. Indeed, it necessarily concerned representations prior to the investment decision being made and Calrissian being created to hold the Alchemy asset. **Limited Disclosure of Certain Arbitration Materials Does Not Constitute a Blanket Waiver as to Confidentiality**

13. Finally, SunTrust claims that the Nu Image Arbitration proceedings are no longer confidential, because a limited number of certain pleadings—the Arbitration Demand [D.I. 22-

1], Respondents' Statement of Defense and Counterclaim [D.I. 22-2] and Nu Image's Reply to Respondents' Counterclaim [D.I. 22-3]—were submitted in this Court in connection with a declaration regarding the status of the Arbitration. *Declaration of Robert Racusin In Support of Debtor's Motion for Entry of an Order Modifying the Automatic Stay to Permit Nu Image Arbitration to Proceed* [D.I. 9-2]. SunTrust contends that because a limited number of pleadings have been disclosed now "[a]ll documents filed or submitted by any party," "[a]ll exhibits," "[a]ll transcripts," and "[a]ll Documents and Communications Relating to the Nu Image Arbitration" are no longer confidential. Objection [D.I. 90] ¶ 7. But the limited disclosure of certain documents from the Arbitration does not result in the blanket waiver of all materials emanating therefrom. *See Pasternak v. Dow Kim*, No. 10 CIV. 5045 LTS JLC, 2013 WL 1729564, at *5-6 (S.D.N.Y. Apr. 22, 2013) (holding that the voluntary production of certain materials from an otherwise confidential arbitration does not operate as the broad waiver that requires the production of subpoenaed transcripts and other documents from a confidential arbitration); *see also BorgWarner*, 2016 WL 1169107, at *5 (requiring the production of only those arbitration materials that had been publicly "disclosed, released or used in other previous litigation"). What was produced was simply the *pleadings* by the parties to the arbitration and the final order arising from it.

**Conclusion**

14. By reason of the foregoing, the Rule 2004 Subpoena served by SunTrust should be denied and the Court should grant the Motion to Quash and grant such other and further relief as the Court otherwise deems necessary or appropriate.

Dated: July 30, 2018
       Wilmington, DE

**THE ROSNER LAW GROUP LLC**

*/s/ Scott J. Leonhardt*
Frederick B. Rosner (DE 3995)
Scott J. Leonhardt (DE 4885)
824 Market Street, Suite 810
Wilmington, DE 19801
Tel.: 302-777-1111
leonhardt@teamrosner.com

-and-

**DIAMOND MCCARTHY LLP**
Andrea Levin Kim
909 Fannin Street, 37th Floor
Houston TX 77010
Tel: 713-333-5107
akim@diamondmccarthy.com

*Counsel for Virgo Investment Group, LLC, Virgo Societas Partnership III (Onshore), L.P. and Virgo Societas Partnership III (Offshore), L.P.*